UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MAHMUD ABOUHALIMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00029-JPH-MG |
| | ) | |
| C.O. LOTZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Motion to Dismiss Fifth Amendment Claims**

Plaintiff Mahmud Abouhalima, who is incarcerated by the Federal Bureau of Prisons, alleges in this lawsuit that he was subjected to excessive force and involuntary medical treatment when he was housed at the United States Penitentiary in Terre Haute, Indiana. He seeks damages pursuant to *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), and injunctive relief. The defendants have moved to dismiss his Fifth Amendment due process claims based on his allegation that he was subjected to involuntary medical treatment. For the following reasons, the motion to dismiss is **GRANTED**.

**I. Standard of Review**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[1] To survive a Rule 12(b)(6) motion, the complaint must "provide the grounds of [plaintiff's] entitlement to relief."

---

[1] Mr. Abouhalima suggests that the motion to dismiss is improper because his claim survived the screening required by 28 U.S.C. § 1915A, but 28 U.S.C. § 1915(e)(2) provides that the Court may dismiss a case "at any time" if the complaint fails to state a claim. Further, unlike a § 1915A screening, a 12(b)(6) motion to dismiss, like this one, allows for "adversarial development of the issues." *Harris v. Rutherberg*, 62 F. Supp. 3d 793, 801 (N.D. Ill. 2014); *but see Williams v. Luking*, 2022 WL 1692430 (S.D. Ill. May 26, 2022) (reasoning that continuing to examine a prisoner complaint after the Court completes the § 1915A screening "undermines the purpose of screening").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation, internal quotation marks, and brackets omitted). That is, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action," "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555–56 (citations and internal quotation marks omitted).

## II. Factual and Procedural Background

In January 2021, Mr. Abouhalima filed a Complaint against Lieutenant Lotz and Officers Alexander, Sullivan, Buckles, and Schaller, among others. Dkt. 1. Mr. Abouhalima alleged that, while he was on the seventh day of a hunger strike, the officers used excessive force against him during a medical assessment in violation of both the Eighth Amendment and "due process of law." *Id.* at 13. The Court screened the Complaint as required by 28 U.S.C. § 1915A, allowing Eighth Amendment claims of excessive force to proceed. Dkt. 9.

Mr. Abouhalima then requested leave to amend his complaint to add Nurse J. Dean as a defendant, two new claims, and additional facts. Dkt. 57. One of those claims was a claim that the defendants denied him due process in violation of his Fifth Amendment rights by forcing him to undergo an involuntary medical procedure. Dkt. 57-2 at ¶¶ 52–53. In opposition to the motion to amend, the defendants argued, among other things, that the proposed due process claim failed to state a claim upon which relief can be granted. Dkt. 59 at 4–7. The Court allowed Mr. Abouhalima to amend his complaint to allege a claim that the defendants subjected him to a medical procedure without his consent as "a due process claim that the defendants were deliberately indifferent to his right to 'informed consent' to medical procedures." Dkt. 73 at 4.

### III. Discussion

The defendants now seek dismissal of Mr. Abouhalima's due process claim on several grounds, but because Mr. Abouhalima cannot obtain damages under *Bivens* or injunctive relief from these defendants, only these grounds for dismissal need to be addressed.[2]

**A. Damages Under *Bivens***

There is no statutory authority to award damages against federal officials who violate the Constitution while acting under color of federal law. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).

Fifty years ago, the Supreme Court held in *Bivens* that district courts have the implied authority to award damages against federal officials for unreasonable searches and seizures in violation of the Fourth Amendment. 403 U.S. at 397. That implied authority was subsequently extended twice: first to actions alleging gender discrimination in federal employment in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979), and second to actions alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980). But these "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. 1843 at 1855.

In the past four decades, the Court has declined to create any new contexts for *Bivens* claims. *Egbert v. Boule*, 142 S. Ct. 1793, 1799–1800 (2022) (listing cases). Expanding *Bivens* to a new context is a "disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1857. To determine whether

---

[2] The defendants question whether Mr. Abouhalima's due process claims are brought against them in their official or individual capacities. While Mr. Abouhalima alleged under Claim Two that he is "suing [the defendants] in their official capacities…," dkt. 57-2 ¶ 52, he also alleged that he was "suing all six defendants in their individual and official capacities," dkt. ¶ 49. The Court therefore addresses both individual and official capacity claims.

3

a *Bivens* remedy is available to a plaintiff suing a federal actor, the Court makes a two-step inquiry. First, it asks whether the claim presents a new *Bivens* context by determining whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Ziglar*, 137 S. Ct. at 1864. Second, if the claim presents a new *Bivens* context, the Court then asks whether there are any special factors that counsel hesitation about extending a damages remedy to that context. *Egbert*, 142 S. Ct. at 1803.

In answering the second inquiry, a district court "faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1805 (cleaned up). Additionally, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858). And this is true even if the individual plaintiff alleges he does not have access to the alternative remedy. *Id.* at 1807 ("[W]hether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts.").

### 1. New Context

The first question a court must ask in determining whether a *Bivens* remedy is available is whether the claim arises in a new *Bivens* context—in other words, whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137 S. Ct. at 1859, 1864. "[D]ifferences that are meaningful enough to make a given context a new one" may include, but are not limited to, "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the

Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1860.

In *Davis*, 442 U.S. at 234, the Supreme Court recognized a *Bivens* remedy for a gender discrimination claim brought under the Fifth Amendment's due process clause. But the fact that Mr. Abouhalima's due process claims are based on that same amendment is not determinative. *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."). Unlike in *Davis*, Abouhalima's claims are not based on alleged gender discrimination, but rather arise from the medical assessment of a federal prisoner undergoing a hunger strike. Indeed, the Supreme Court has not extended the *Bivens* remedy to any other type of due process claim, including the one raised here. *See See Goree v. Serio*, 735 F. App'x 894, 895 (7th Cir. 2018) (unpublished) ("Goree's *Bivens* claims are premised on due-process violations that the Supreme Court does not recognize as cognizable under *Bivens*, and it would be improper to recognize a new theory of relief in this case."). Mr. Abouhalima's due process claims therefore arise in a new *Bivens* context, requiring the consideration of whether "special factors" weigh in favor of recognizing *Bivens* relief.

### 2. Special Factors

If a claim arises in a new context, the Court must consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550. "Where Congress has established an alternative remedial structure to protect a constitutional right, the Supreme Court has strongly cautioned that the courts should not create a second remedy." *Goree*, 735 F. App'x at 895; *see Abbasi*, 137 S. Ct. at 1865 (noting where an alternative process

5

exists, it "usually precludes a court from authorizing a *Bivens* action"). Thus, if the Court finds any reason to defer to Congress—or any alternative remedy, even if the plaintiff alleges it is inadequate—the analysis is complete.

The availability of alternative remedies here forecloses a *Bivens* action for Mr. Abouhalima's claims. The BOP's administrative remedy process, 28 C.F.R. § 542.10 *et seq.*, provides inmates with the ability to seek formal review of any complaint related to the conditions of their confinement. *See Egbert*, 142 S. Ct. at 1806 (citing *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)). The Court therefore declines to extend a damages remedy for Mr. Abouhalima's due process claim that he was subjected to medical care without his consent.

### B. Injunctive Relief

Mr. Abouhalima also seeks injunctive relief in the form of an order requiring the defendants to follow the "law, policies and procedures in place with respect to hunger strike[s]." Dkt. 57-2 at 14. But, because Mr. Abouhalima is no longer confined at the United States Penitentiary in Terre Haute, he cannot obtain injunctive relief against these defendants. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred.") (cleaned up). Accordingly, his request for injunctive relief based on his Fifth Amendment claims is **dismissed as moot**.

### IV. Conclusion

The defendants' motion to dismiss, dkt. [94], is **GRANTED**. Mr. Abouhalima's Fifth Amendment due process claims are **DISMISSED**.

**SO ORDERED.**

Date: 8/22/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MAHMUD ABOUHALIMA
28064-054
FLORENCE ADMAX U.S. PENITENTIARY
Inmate Mail/Parcels
Legal Mail - Open Only in the Presence of the Inmate
PO BOX 8500
FLORENCE, CO 81226

Gina M. Shields
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
Gina.Shields@usdoj.gov